UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                                              :
JERMAINE COOPER,                                              :
                                                              :           11 Civ. 9260 (PAE)
                                           Plaintiff,         :
                                                              :           OPINION & ORDER
                         -v-                                  :
                                                              :
CAPTAIN MAYRA MARRERO, et al.,                                :
                                                              :
                                           Defendants.        :
                                                              :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

       Plaintiff Jermaine Cooper brings this action, pursuant to 42 U.S.C. § 1983, against

defendants Captain Mayra Marrero and Officers Kirkton Dale, Damera Small, and Nakiya

Thompson, who are employees of the New York City Department of Correction.  Cooper claims

that defendants violated his Eighth Amendment right to be free from cruel and unusual

punishment when, on three occasions, they denied him permission to go to the bathroom for a

period of no longer than one hour.  Defendants move for summary judgment.  For the reasons

that follow, that motion is granted.

I.     **Background**[1]

       A.     **Factual Background**

       Beginning on October 23, 2011, Cooper was detained in the custody of the New York

City Department of Correction, at the Manhattan Detention Complex ("MDC").  Beath Decl. Ex.

---

[1] The Court's account of the facts is drawn from the Declaration of Patrick Beath (Dkt. 39)
("Beath Decl.") and the exhibits attached thereto; defendants' Local Rule 56.1 Statement (Dkt.
40); two nearly identical documents which appear to be Cooper's Local Rule 56.1 Statement
(Dkt. 47, at 5–6; Dkt. 48, at 1–2); and other medical records submitted by Cooper (Dkt. 48, at 7–
20).

D (12/10/2012 Deposition of Jermaine Cooper) ("Cooper Dep."), at 45.  In late October 2011,

Cooper was prescribed medication to treat his high blood pressure.  *Id.* at 58–59.  That

medication makes him need to urinate frequently.  *Id.*  As a result, on October 31, 2011, a

physician at the New York City Department of Health and Mental Hygiene provided Cooper

with a note that reads:  "Permission to have access to cell/toilet due to medical condition."  Beath

Decl. Ex. E.[2]

      The "Seven-South" section of MDC in which Cooper was detained consists of two floors

with 16 individual cells on each floor arranged in a U-shape around a common area.  Cooper

Dep. 45–46.  Each cell has a toilet in it, but the common area does not.  *Id.* at 51, 62.  During the

day, the doors to the individual cells remain locked.  *Id.* at 81.  Once every hour, at the same time

each hour, a correctional officer announces "options," which is a five-minute window during

which an inmate can ask an officer to open the inmate's cell door so that the inmate can either

exit or reenter his cell.  *Id.* at 80–81.  Inmates who spend time in the common area use these

options periods to use the bathroom, grab food, or return to their cell to be locked in for the

night.  *Id.* at 81.  Inmates typically cannot enter or exit their cells at other times.  This lawsuit

arises from three occasions on which Cooper had left his cell to spend time in the common area

and was denied permission to reenter his cell to use the bathroom before the next options period.

      First, on December 5, 2011, Officer Damera Small was working in the Seven-South

common area.  *Id.* at 87–88.  Cooper asked Officer Small to let him back into his cell so that he

could use the bathroom, but she ignored him.  *Id.* at 91–93.  Cooper then showed her his doctor's

---

[2] Cooper claims to have received several such notes.  Cooper Dep. 61, 63.  They are not in the record, however, and it is not clear from Cooper's deposition testimony how these notes differ from the October 31, 2011 note.  *See id.* at 93 (defense attorney's question represents that the second note was a renewal of the October 31, 2011 note, and that a third note had more specific instructions about permission to use the bathroom).

note, but Officer Small informed Cooper that he would have to wait until the next option. *Id.* at 93. Cooper asked a second time, and was again refused. *Id.* at 95–96. Cooper testified that being forced to hold his bladder typically caused him sharp pain in his stomach and bladder area, which would last between five and 15 minutes and subside when he urinated. *Id.* at 98–99. Cooper did not, however, inform Officer Small that he was in pain. *Id.* at 100.

Second, on December 6, 2011, Cooper approached Officer Kirkton Dale, who was working in the common area, showed him the doctor's note, and requested to be let into his cell. *Id.* at 109–10. Officer Dale refused. *Id.* Ten to 15 minutes after speaking with Officer Dale, Cooper urinated on himself because "the pain was unbearable." *Id.* at 115–16. Cooper did not inform Officer Dale that he was in pain. *Id.* at 117.

Third, on December 9, 2011, Cooper approached Officer Nakiya Thompson, who was working in the common area, and asked to use the bathroom. *Id.* at 123. She told him to wait until the next option. *Id.* Cooper showed Officer Thompson his doctor's note, but Officer Thompson stated that it was probably fake, because the previous day several inmates had been caught with fake doctor's notes. *Id.* After Cooper insisted that he had a serious medical condition, *id.* at 124–25, Officer Thompson asked what condition he had, to which Cooper replied that it was none of her business, *id.* at 128. Five minutes after being denied permission to enter his cell, Cooper urinated on himself. *Id.* Cooper did not tell Officer Thompson that he was in pain, but did tell her that he had urinated on himself. *Id.* at 129.[3]

---

[3] None of these three incidents involved Captain Mayra Marrero, the fourth defendant. On one occasion, Cooper attempted to call out to Captain Marrero as she was walking by him, but she brushed him off. Cooper Dep. 101–03. The only other interaction with Captain Marrero that Cooper describes is one occasion when he spoke with Captain Marrero about getting a VCR for the inmates. *Id.* at 103.

On three other occasions during this time period, Cooper visited the prison health center. On December 5, 2011, he was treated for elbow pain, for which he was prescribed ibuprofen. Beath Decl. Ex. F, at NYC18.  On December 8, 2011, he was treated for dermatitis on his hands, for which he was prescribed hydrocortisone ointment. *Id.* at NYC16.  On December 12, 2011, he was treated for discolored and peeling feet, for which he was prescribed ointment. *Id.* at NYC14.  On none of these visits did Cooper complain of stomach or bladder pain.  Cooper Dep. 145–46, 148–49, 150–52.  Additionally, beginning the first week of November 2011, Cooper suffered from an irritating rash on his legs. *Id.* at 140.  He was given ointment for the rash, which subsided in early 2012. *Id.* at 140–41.

### B.  Procedural History

On December 16, 2011, Cooper filed a Complaint.  Dkt. 2.  On May 21, 2013, he filed an Amended Complaint.  Dkt. 21.  On March 14, 2013, defendants moved for summary judgment. Dkt. 38–41.  On April 17 and 22, 2013, Cooper filed a memorandum of law and a statement of facts in opposition to that motion.  Dkt. 47–48.  On May 2, 2013, defendants filed a reply.  Dkt. 49–50.

## II.   Applicable Legal Standard

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating the absence of a question of material fact.  In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).  To survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing

to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).  Only disputes over "facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

In considering defendants' motion, the Court is mindful that Cooper is a *pro se* litigant whose submissions must be construed to "raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (citation and emphasis omitted).  However, this forgiving standard "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment."  *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (citation omitted).

## III.   Discussion

The Eighth Amendment protects prisoners from "cruel and unusual punishment" caused by prison officials.  U.S. Const. amend. VIII.  "To determine whether a punishment is cruel and unusual, courts must look beyond historical conceptions to 'the evolving standards of decency that mark the progress of a maturing society.'"  *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 2021 (2010) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)).

To establish an Eighth Amendment violation arising out of a condition of his confinement, a prisoner "may prevail only where he proves both an objective element—that the prison officials' transgression was 'sufficiently serious'—and a subjective element—that the officials acted, or omitted to act, with a 'sufficiently culpable state of mind,' *i.e.*, with 'deliberate indifference to inmate health or safety.'" *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "Regarding the 'objective' requirement, the Supreme Court has explained that while the Constitution 'does not mandate comfortable prisons,' prisoners may not be denied 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349, 347 (1981)). "Ultimately, to establish the objective element of an Eight[h] Amendment claim, a prisoner must prove that the conditions of his confinement violate contemporary standards of decency." *Id.*

Similarly, to prevail on an Eighth Amendment claim based on inadequate access to medical care, "a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104). This standard also incorporates both objective and subjective elements: "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003); *see also Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). "As to the objective element, there is no 'static test' to determine whether a deprivation is sufficiently serious." *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012). A serious medical need is generally characterized by "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (citation omitted).

Whether Cooper's claim is analyzed as a condition of his confinement or inadequate attention to his medical needs, no reasonable jury could find that Cooper has met the objective prong of a sufficiently serious deprivation.  On three occasions, Cooper was temporarily denied access to a bathroom.  Although Cooper does not specify how long each denial lasted, the maximum length of time during which he was unable to use the bathroom was 55 minutes—the length of time between options.  *See* Cooper Dep. 80–81.  Moreover, Cooper's testimony reflects that the "sharp pain" in his stomach and bladder never lasted longer than 15 minutes.  *Id.* at 98–99 (pain typically subsided within five to 15 minutes); 115–16 (on December 6, 2011, Cooper suffered unbearable pain for 10 to 15 minutes, which subsided after urinating on himself); 128 (on December 9, 2011, Cooper suffered intense pain for a few minutes before urinating on himself).  Courts in this district have consistently found that the temporary deprivation of the right to use the toilet, absent serious physical harm or serious risk of contamination, does not rise to the level of an objective constitutional violation.  *See, e.g.*, *Walker v. Dep't of Corr. Serv.*, No. 11 Civ. 993 (KBF), 2012 WL 527210, at *2 (S.D.N.Y. Feb. 14, 2012) (no constitutional violation where prisoner was denied right to use bathroom for 80 minutes); *Jones v. Marshall*, No. 08 Civ. 562, 2010 WL 234990, at *3 (S.D.N.Y. Jan. 19, 2010) (same, 90 minutes); *Whitted v. Lazerson*, No. 96 Civ. 2746 (AGS), 1998 WL 259929, at *2 (S.D.N.Y. May 21, 1998) (no constitutional violation where prisoner had to wait 90 minutes to use bathroom and urinated and defecated in his pants); *Odom v. Keane*, No. 95 Civ. 9941 (SS), 1997 WL 576088, at *4–5 (S.D.N.Y. Sept. 17, 1997) (Sotomayor, J.) (no constitutional violation where plaintiff was deprived of a working toilet for 10 hours, nor where he could not flush his toilet between 9 p.m. and 7 a.m. for a period of several months); *cf. Mateo v. Alexander*, No. 10 Civ. 8427 (LAP)(DCF), 2012 WL 864805, at *5 (S.D.N.Y. Mar. 14, 2012) (two denials of right to use the

bathroom for no more than an hour do not rise to the level of adverse action for § 1983 retaliation claim).[4]

That Cooper was taking medication that made him need to urinate more frequently than the average person does not change the analysis, because there is no evidence that he suffered any serious physical harm.  Cooper testified that the "only physical injury" that he suffered from these incidents was a rash on his legs.  *See* Cooper Dep. 139.  But he also testified that he developed this rash in the first week of November 2011, well before the incidents at issue here. *Id.* at 140.  Moreover, he testified that he was given ointment for the rash, which caused it to subside.  *Id.* at 140–41.  Thus, a reasonable juror could not find that the rash constituted a serious physical injury stemming from the deprivations at issue here.  *See Jones*, 2010 WL 234990, at *3 (no sufficiently serious injury where plaintiff presented no evidence on which a reasonable trier of fact could conclude that plaintiff's urinary tract infection resulted from 90 minute delay in bathroom use, and infection was resolved with antibiotics).

The temporary pain and discomfort suffered by Cooper when he had to hold his bladder for 15 to 55 minutes was not an "extreme deprivation" but rather a "routine discomfort," which falls short of the sort of denial of "'the minimal civilized measure of life's necessities' . . . sufficiently grave to form the basis of an Eighth Amendment violation."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Thus, Cooper has

---

[4] *Shariff v. Coombe*, 655 F. Supp. 2d 274 (S.D.N.Y. 2009), is not to the contrary.  In that case, handicapped inmates brought a § 1983 claim against the state and prison officials claiming, *inter alia*, that their Eighth Amendment rights were violated by the lack of handicapped accessible bathrooms throughout the prison. The court denied defendants' motion for summary judgment, distinguishing the cases cited herein relating to the temporary deprivation of bathroom privileges, because in *Shariff* the handicapped prisoners soiled themselves several times per week over an extended period and suffered physical injuries trying to use inaccessible restrooms. *Id.* at 298–99.  Here, by contrast, Cooper was deprived of the ability to use the bathroom on three discrete occasions and those deprivations were temporary, never exceeding an hour.

failed to establish a genuine issue of material fact as to the objective prong of the Eighth

Amendment analysis, and summary judgment is merited in favor of defendants.[5]

**CONCLUSION**

Defendants' motion for summary judgment is granted. The Clerk of Court is directed to

terminate the motion at docket number 38 and to close the case. The Court certifies, pursuant to

28 U.S.C. § 1915(a) (3), that any appeal from this Order would not be taken in good faith, and

therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v.*

*United States*, 369 U.S. 438, 444–45 (1962).


SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge


Dated: June 11, 2013
       New York, New York


---

[5] Because Cooper's Eighth Amendment claim fails on the first prong, the Court need not address
the subjective prong. The Court notes, however, that this presents a closer question—although
Cooper never told the officers that he was in pain, *see* Cooper Dep. 100, 117, 129, he did show
the officers his doctor's note on each occasion that he sought permission to go to the bathroom,
and the officers ignored the note, *see id.* at 93, 109–10, 123. *See Farmer v. Brennan*, 511 U.S.
825, 835 (1994).

Similarly, having found no Eighth Amendment violation, the Court need not address defendants'
alternative arguments that (1) Officers Small, Dale, and Thompson are entitled to qualified
immunity, *see Kelsey v. Cnty. of Schoharie*, 567 F.3d 54, 62 (2d Cir. 2009) ("When the facts,
viewed in light most favorable to the plaintiff, do not demonstrate that an officer's conduct
violated a constitutional right, the court need not further pursue the qualified immunity
inquiry."); and (2) Captain Marrero was not personally involved in any deprivation of a
constitutional right, *see Blyden v. Mancusi*, 186 F.3d 252, 265 (2d Cir. 1999) ("Of course, for a
supervisor to be liable under Section 1983, there must have been an underlying constitutional
deprivation.").